IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| MING ZHANG, | * | |
| Plaintiff, | * | |
| vs. | * | |
| THE BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, JOSE CORDERO, and MARSHA DAVIS, | * | CASE NO. 3:23-CV-149 (CDL) |
| Defendants. | * | |

O R D E R

Ming Zhang was a tenured faculty member at the University of Georgia until she was terminated in 2023. Zhang asserts that she was subjected to discrimination based on her race and national origin, that she was retaliated against for complaining of discrimination, that she suffered from a disability but was denied reasonable accommodations, and that she was terminated after her accommodation requests were denied. Zhang asserts claims against the Board of Regents of the University System of Georgia under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). She also asserts individual capacity claims against her former supervisors, Jose Cordero and Marsha Davis, for race discrimination and retaliation under 42 U.S.C. § 1981, through 42 U.S.C. § 1983. Defendants filed a motion to dismiss, arguing

that Zhang failed to state a claim.  For the reasons set forth below, the Court denies the motion (ECF No. 22).

## MOTION TO DISMISS STANDARD

More than a dozen years ago, the U.S. Supreme Court explained that to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include enough factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  So, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

This Court concluded that *Twombly* and *Iqbal* did not represent a sea-change in the legal standard governing a motion to dismiss because nothing in those opinions abandoned notice pleading or rewrote Rule 12(b)(6).  Since *Twombly* and *Iqbal* were decided, the Court has repeatedly cautioned attorneys to resist the "*Twombly-Iqbal* compulsion" to file a motion to dismiss in every case.

2

Unfortunately, many lawyers still "fail to appreciate the distinction between determining whether a claim for relief is 'plausibly stated,' the inquiry required by *Twombly/ Iqbal,* and divining whether actual proof of that claim is 'improbable,' a feat impossible for a mere mortal, even a federal judge." *Barker ex rel. U.S. v. Columbus Reg'l Healthcare Sys., Inc.*, 977 F. Supp. 2d 1341, 1346 (M.D. Ga. 2013).

Here, counsel for Defendants did not resist the *Twombly/Iqbal* compulsion.  In their motion to dismiss, Defendants argue that Zhang failed to assert any plausible factual allegations in support of her claims and that her complaint contains nothing more than formulaic recitations of the elements of each claim.  In making these arguments, Defendants ignore many of Zhang's factual allegations, they construe the allegations in the light most favorable to Defendants, they make arguments based on matters not alleged in the complaint, and they appear to contend that each factual allegation should be read in isolation rather than in the context of the other factual allegations.  Contrary to the suggestions implicit in Defendants' arguments, the Court at this stage of the litigation must read the operative complaint as a whole, accept Zhang's factual allegations as true, and construe the factual allegations in the light most favorable to Zhang. *See, e.g.*, *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)

3

(explaining that the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff).

## FACTUAL ALLEGATIONS

Ming Zhang alleges the following facts in her first amended complaint (ECF No. 20), which, as previously stated, the Court must accept as true for purposes of the pending motion to dismiss. Zhang is a United States citizen who identifies her race as Asian and her national origin as Chinese. She was an associate professor of epidemiology and biostatistics at the University of Georgia. Zhang began working at the University in 2010 and ultimately became an associate professor with tenure. Zhang asserts that her primary duties to the University were research obligations under federally funded grants that she obtained. During the timeframe relevant to this action, Jose Cordero was department head of the epidemiology and biostatistics department, and Marsha Davis was a dean of the health promotion and behavior department.

In August and September of 2020, Zhang reported to Cordero and Davis that a white promotion and tenure candidate's dossier contained falsehoods. Cordero and Davis did not take action against the candidate; instead, Cordero issued Zhang a formal letter of counseling for presenting false allegations. Zhang's allegations about the candidate were not submitted to the promotion and tenure committee, and the candidate received tenure. Zhang

4

and several colleagues, including Xiao Song and Hanwen Huang, registered a formal complaint with the University regarding Cordero's actions, and they asserted that he created a discriminatory work environment based on their race and national origin (Asian-American/Chinese).  According to Zhang, the University delayed investigating the complaint, and when it did investigate, the University ignored evidence provided by Zhang, Song, and Huang; disclosed the identities of Zhang and the others to Cordero and Davis; and improperly concluded the investigation in favor of Cordero and Davis.  In addition, Zhang alleges that Cordero prohibited her and Song (the other female Asian faculty member in the department) from voting on two promotion and tenure cases even though they were eligible to vote.  In 2021, after Zhang complained about Cordero's actions, she received a low performance evaluation.  Zhang continued to complain that she received biased treatment based on her race and national origin.

In the spring of 2021, Zhang requested college-approved course buyouts so that she could focus full-time on her obligations under grants that she had received and would not have to teach classes.  Cordero approved Zhang's course buyout plan for fall 2021 and spring 2022.  But in late 2021, Cordero informed Zhang that the college had instituted a new policy and that she would not be allowed to use her course buyouts.  Zhang informed Cordero that she had a heart condition, that she already had a full-time

obligation to her grants, that without the course buyouts she would have to work many extra hours, and that the resulting sleep-deprivation and stress presented significant threats to her heart condition. Zhang was not permitted to use a course buyout for spring 2022, and she was assigned to teach a large class in addition to her grant obligations.

After the spring 2022 semester began, Zhang frequently worked into the night to keep up with her workload. She informed Cordero and Davis that she could not continue teaching the course on top of her full-time grant obligations because the stress and lack of sleep from teaching the course posed a significant threat to her health due to her heart condition. Zhang offered to teach the course until a replacement could be found. According to Zhang, neither Cordero nor Davis helped her after she asked to stop teaching the course. Instead, in March 2022, Davis sent Zhang a letter of counseling which notified Zhang of disciplinary actions against her. The University formed a committee to determine whether Zhang had violated any policies. The committee found that there was notable dysfunction within the biostatistics department, that the college's policy on course hours needed to be clarified, that no formal disciplinary proceedings should be taken against Zhang, and that Zhang and her supervisors should seek mediation and mentoring to resolve their conflicts. Davis and Cordero refused to participate in mediation.

6

In the fall of 2022, Zhang was assigned to teach the largest in-person undergraduate core course offered by her department but was not provided with a teaching assistant even though she requested one.  According to Zhang, white male instructors and instructors who had not complained of race discrimination or sought accommodations for disabilities received teaching assistants for the same course in the same semester, even though they had far fewer students.  Zhang complained to Cordero and Davis about the lack of a teaching assistant, and she proposed several solutions so that she could have teaching assistant support that would mitigate the work-related stress that exacerbated her heart condition.  Cordero and Davis refused to meet with her about the teaching assistant situation.  Davis removed Zhang from teaching at the end of October 2022.  Based on recommendations from Cordero and Davis, the University charged Zhang with neglect of duty in teaching and disruption of teaching, administrative, or other authorized activities.

In February 2023, Zhang was hospitalized and required surgery due to a life-threatening heart disease.  She was approved for medical leave under the Family Medical Leave Act, but Cordero and Davis refused to acknowledge Zhang's medical leave status. Cordero demanded that Zhang submit a post-tenure review dossier on short notice.  Although a white counterpart who was not on medical leave

7

had been permitted to submit a late dossier in 2020, Cordero and Davis denied Zhang's request for an extension.

Zhang returned from medical leave in August 2023. Within days of her return to the office, the University scheduled a faculty removal and dismissal hearing. On August 30, 2023, while Zhang was still wearing an external defibrillator, the University held a hearing on the revocation of Zhang's tenure and the termination of her employment. Zhang pointed out that she had an offer from the University attorney to transfer departments instead of being terminated. Nevertheless, Zhang was terminated, and her tenure was revoked. In December 2023, the University asked the National Institutes of Health to replace Zhang on the federally funded research Zhang had conceived, designed, and led; the proposed replacement was a white male faculty member who did not have the expertise required for the position.

Zhang alleges that between 2020 and the time of her termination, she continuously and repeatedly objected to poor treatment that she asserted was based on her race and national origin. She also alleges that even though she informed Cordero and Davis that she had a disability related to her heart condition and that she needed a reasonable accommodation, Defendants failed to respond to her requests for accommodation even though doing so would not have caused an undue hardship.

8

DISCUSSION

Zhang asserts the following claims: (1) race and national origin discrimination against the Board of Regents under Title VII, (2) race discrimination against Cordero and Davis under § 1981 (through § 1983), (3) retaliation against Cordero and Davis under § 1981 (through § 1983), and (4) disability discrimination against the Board of Regents under the Rehabilitation Act.[1]  Defendants argue that all claims must be dismissed.  The Court evaluates each claim in turn.

## I. Zhang's Title VII Claims Against the Board of Regents

Title VII prohibits race and national origin discrimination against an individual with respect to the terms and conditions of her employment.  42 U.S.C. § 2000e-2(a)(1).  To establish a Title VII race or national origin claim, a plaintiff must demonstrate that her race or national origin was a "motivating factor" for a challenged employment practice that amounts to an adverse employment action, which requires "some harm respecting an

---

[1] The operative complaint contains two Title VII counts against the Board of Regents--one for race discrimination and one for national origin discrimination.  The Title VII counts do not expressly mention retaliation.  The only retaliation count is the § 1981 retaliation count against Cordero and Davis.  In her response brief, Zhang appears to suggest that she asserted a Title VII retaliation claim.  Zhang may be able to amend her complaint under Federal Rule of Civil Procedure 15, but she may not add a new claim in a response brief.  Since the operative complaint does not expressly assert a Title VII retaliation claim, there is no motion to dismiss such a claim, and the Court does not evaluate such a claim.

9

identifiable term or condition of employment." *Id.* § 2000e-2(m); *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).

The Board of Regents argues that Zhang only complains about things that were not identifiable terms or conditions of her employment and thus did not plausibly allege an adverse employment action. The Board of Regents is wrong. Zhang alleges that she was forced to teach a large undergraduate course without a teaching assistant—an employment condition that was less favorable than that of white instructors who taught the same course during the same semester with far fewer students but received teaching assistants that lightened their workload from the course. Zhang also alleges facts which, if believed, would support an inference that she was subjected to disparate discipline because of her race or national origin, which culminated in University officials revoking her tenure, terminating her employment, ousting Zhang from her grant position, and replacing her with an unqualified white man.[2] These allegations certainly concern harm respecting an identifiable term or condition of employment.

---

[2] Zhang further asserts that after she was charged with several infractions, her supervisor demanded that she submit a post-tenure review dossier but refused to give her an extension even though he had given an extension to a white faculty member. Zhang does not clearly allege why the dossier was important or if it had anything to do with the disciplinary proceedings against her, and it is unclear from the present complaint whether Zhang is pursuing a claim based on an adverse impact of the extension denial or if she included factual allegations about the denial to support her contention that her race and national origin motivated other challenged employment actions.

10

The Board of Regents contends that even if Zhang plausibly alleged an adverse employment action, she did not allege that her race or national origin was a motivating factor. The Board of Regents argues that because no person expressly referenced Zhang's race or national origin, she cannot establish race or national origin discrimination. Direct evidence is certainly one way to establish intentional discrimination, but it is not the only way, and the failure to allege that direct evidence exists does not doom Zhang's race and national origin discrimination claims. The Board of Regents also maintains that Zhang did not plausibly allege that any adverse employment action was motivated by her race or national origin because she did not establish the "similarly situated" element of a *McDonnell Douglas* prima facie case. But the *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement," so "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 515 (2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)).

Zhang alleges that University officials treated her, an Asian/Chinese person, less favorably than white instructors who taught the same course during the same semester with fewer students, and she asserts that she was terminated and replaced with a white man who was unqualified for the position. These

11

allegations are enough to support an inference of intentional race or national origin discrimination.[3] For these reasons, the Court denies the Board of Regents' motion to dismiss the Title VII claim.

### II. Zhang's Section 1981 Claims Against Cordero and Davis

In addition to her Title VII claims against the Board of Regents, Zhang asserts § 1981 claims against Cordero and Davis.[4] Section 1981 prohibits racial discrimination in the making and enforcement of contracts, which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). Section 1981 also "encompasses claims of retaliation." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). To state a claim for discrimination or retaliation under § 1981, a plaintiff must allege facts to show that the plaintiff's race or protected activity was the "but-for" cause of the challenged employment action. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Cordero and Davis argue that they are entitled to qualified immunity on the § 1981 claims. Qualified immunity shields

---

[3] The Court emphasizes that at this stage of the litigation, it must accept the allegations in Zhang's complaint as true. If discovery does not reveal evidence to support the allegations, then the Board of Regents may file a summary judgment motion.

[4] Section 1983 provides the exclusive damages remedy for violations of § 1981 by a government actor. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Although § 1981 creates the right to be free of racial discrimination in the making and enforcement of contracts, it does not provide an independent dont damages remedy when a government actor is the alleged wrongdoer. *Id.*

12

government officials acting in their discretionary authority "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Here, Zhang does not dispute that Cordero and Davis were acting within their discretionary authority when they took the challenged employment actions.  Thus, the Court must determine whether Zhang's factual allegations demonstrate that Cordero and Davis violated her clearly established statutory rights under § 1981.  *See, e.g., Bryant v. Jones*, 575 F.3d 1281, 1300 (11th Cir. 2009) (explaining "clearly established" prong of the qualified immunity test).

Defendants do not dispute that it has long been clearly established that § 1981 prohibits "racial discrimination in public employment."  *Bryant*, 575 F.3d at 1300 (quoting *Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995)).  Perplexingly, Defendants argue that Zhang did not plead a clearly established right to be free from retaliation.  But it has also long been clearly established that § 1981 prohibits retaliation against public employees who oppose racial discrimination.  *See id.* at 1301 (citing *CBOCS W., Inc.*, 553 U.S. at 457).  So, reasonable officials would have known by the time of the events giving rise to this action that it was unlawful to discriminate against public employees on account of

their race and retaliate against them for complaining of race discrimination.

Cordero and Davis argue that even if a general right against discrimination or retaliation was clearly established, it was not clearly established that their alleged conduct could be construed as unlawful discrimination or retaliation.  Their first argument is that Zhang did not allege an actionable adverse employment action.  It was clearly established before 2020 that § 1981 prohibits a supervisor from taking an adverse employment action against an employee because of her race.  At the time of the events giving rise to this action, a discriminatory § 1981 adverse employment action required a "'*serious and material* change in the terms, conditions, or privileges of employment' so that a 'reasonable person in the circumstances' would find 'the employment action [to] be materially adverse.'"[5] *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (alteration in original) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).  It was also

---

[5] In *Muldrow*, the Supreme Court abrogated the "serious and material change" standard and concluded that an employee must show "some harm respecting an identifiable term or condition of employment," emphasizing that there is no heightened bar and that discrimination occurs when a person is treated worse based on a protected trait. *Muldrow*, 601 U.S. at 355 (explaining the standard in the Title VII context). But *Muldrow* was not decided until after the events giving rise to this action occurred, so it could not provide clear notice of this standard to Cordero and Davis.

14

clearly established that § 1981 prohibits a supervisor from taking a "materially adverse action" against an employee because the employee opposed racial discrimination. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N.*, 548 U.S. at 68). At the time of Defendants' alleged conduct, a "materially adverse action" was one that likely would have dissuaded a reasonable person from making a charge of discrimination. *Burlington N.*, 548 U.S. at 68.

Cordero and Davis frame their conduct as simply "requiring Zhang to fulfill her teaching duties per the department's policies" and "not assigning her a teaching assistant." Defs.' Mot. to Dismiss 11, ECF No. 22. But at this stage in the litigation, the Court must accept all the factual allegations in Zhang's complaint as true and draw reasonable inferences in her favor. As discussed above, Zhang alleges that she was denied a teaching assistant for a course that warranted one and that she was ultimately terminated from her job. The present allegations are enough to show that Zhang suffered an adverse employment action or a materially adverse action.

Cordero and Davis also argue that Zhang did not allege enough facts to show causation for a discrimination claim or a retaliation claim. To establish a § 1981 discrimination claim, a plaintiff must establish that race was the but-for cause of her adverse employment action. As discussed above, Zhang alleges that Cordero

15

and Davis treated her, an Asian/Chinese person, less favorably than white instructors and then recommended terminating her and replacing her with a white man who was unqualified for the position.  She included in her allegations the factual basis for these assertions.  These allegations are enough to support an inference of intentional race discrimination.  As for the § 1981 retaliation claim, a plaintiff must show that her protected conduct of opposing racial discrimination was the but-for cause of a materially adverse action.  Here, Zhang alleges that she began complaining to University officials of racial discrimination in 2020 and continued complaining about biased treatment until her termination.  She further alleges that after she complained about biased treatment (including denial of the opportunity to vote on a tenure candidate, denial of a teaching assistant, and disparate discipline), Cordero and Davis took adverse actions against her and ultimately caused her termination.  These allegations are enough to support an inference of intentional retaliation at the pleading stage.

In summary, Zhang alleges facts which, if accepted as true, create an inference that Cordero and Davis discriminated against Zhang because of her race and retaliated against her when she complained of race discrimination.  It was clearly established before 2020 that § 1981 prohibited such conduct.  Cordero and Davis are not entitled to qualified immunity at this stage in the

16

litigation. This ruling shall not prevent Cordero and Davis from seeking summary judgment based on qualified immunity following discovery.

### III. Zhang's Rehabilitation Claim Against the Board of Regents

Zhang's next claim is that the Board of Regents discriminated against her based on her disability by failing to respond to her requests for reasonable accommodations and by terminating her because of her disability. Section 504 of the Rehabilitation Act prohibits disability discrimination under programs receiving federal funds. 29 U.S.C. § 794(a). "The standards used to determine whether [§ 504] has been violated in a complaint alleging employment discrimination [are] the standards applied under title I of the Americans with Disabilities Act." *Id.* § 794(d).

To establish discrimination under the Rehabilitation Act, an individual must show that she has a "disability," which is a "physical or mental impairment that substantially limits one or more major life activities" of the individual. 42 U.S.C. § 12102(1)(A).[6] An individual must also demonstrate that she is "otherwise qualified for the position," and she "was subjected to unlawful discrimination as the result of [her] disability." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1334 (11th Cir. 2022) (quoting *Sutton v. Lader*, 185 F.3d 1203, 1207-08

---

[6] The term "disability" also includes having "a record of" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(B)-C).

17

(11th Cir. 1999)). "Unlawful discrimination under the Rehabilitation Act includes failing to provide reasonable accommodations for employees' known disabilities." *Id.*

The Board of Regents does not dispute for purposes of the present motion that Zhang's heart condition is a disability within the meaning of the Rehabilitation Act. The Board of Regents argues, though, that Zhang did not adequately allege facts to support a claim that she was discriminated against because of her disability. Zhang alleges that she was a faculty member whose central duties to the University were research obligations under federally funded grants that she obtained. She further alleges that although she requested reasonable accommodations for her disability, the University refused to engage in the required interactive process with her and then terminated her within a month after she returned from medical leave related to her disability. Her complaint focuses on two proposed accommodations that she contends would have allowed her to perform the essential functions of her job: course buyouts and a teaching assistant.

Regarding course buyouts, Zhang alleges that before 2022, she was allowed to use course buyouts so that she could focus on her grant-funded research instead of teaching courses.[7] She further

---

[7] The Board of Regents contends that course buyouts are not a reasonable accommodation because Zhang alleges that all professors in her department were required to teach courses, which suggests that teaching was an essential function of Zhang's job and that the requested accommodation would have required elimination or reallocation of that function. But

alleges that her department approved a course buyout for spring 2022 but later revoked it, that the department's faculty course hours requirements were so unclear that a University committee found that they needed to be clarified, and that a University committee concluded that Zhang should not face formal disciplinary proceedings for her course-related conduct in spring 2022. Zhang contends that if she had been permitted to use course buyouts as she had in the past, that would have been a reasonable accommodation that enabled her to perform the essential functions of her job.

Regarding the teaching assistant, Zhang alleges that other instructors who taught the same course during the same semester with fewer students received a teaching assistant to help with the workload associated with teaching. Thus, Zhang asserts, the University could have accommodated her disability by providing a teaching assistant as it did for her colleagues who had not requested an accommodation for a disability. Zhang contends that having a teaching assistant would have enabled her to perform her grant-related duties and teach the course.

Accepting Zhang's allegations as true, as the Court must at this stage in the litigation, the Court finds that Zhang

---

the cited portion of the complaint contains no such allegation. Rather, Zhang appears to allege that teaching was *not* an essential function of her role. Whether this turns out to be the case upon further development of the factual record during discovery remains to be seen.

sufficiently alleged facts to support a claim of disability discrimination. The Board of Regents nonetheless argues that the Court should dismiss Zhang's disability discrimination claims, asserting as though it were seeking summary judgment that it had a legitimate nondiscriminatory reason for terminating Zhang: she "refused to teach courses." Defs.' Mot. to Dismiss 20, ECF No. 22. Zhang, though, does *not* allege that she refused to teach courses. Rather, she alleges that she was removed from teaching after she requested reasonable accommodations for her disability, that the disciplinary process the University used to terminate her was improper, and that the University terminated her even though she had an offer to transfer to another department. Zhang's complaint states a claim for disability discrimination, and the motion to dismiss this claim is denied.

## CONCLUSION

As discussed above, Defendants' motion to dismiss (ECF No. 22) is denied. The Court previously stayed the Rules 16/26 Order requirements pending a ruling on the motion to dismiss. Order (June 18, 2024), ECF No. 24. The stay is lifted. The parties shall submit a proposed scheduling order within twenty-one days of the date of this order.

IT IS SO ORDERED, this 26th day of August, 2024.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA