IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

MING ZHANG,                          *

    Plaintiff,                    *

vs.                                  *

THE BOARD OF REGENTS OF THE          *     CASE NO. 3:23-CV-149 (CDL)
UNIVERSITY SYSTEM OF GEORGIA,
*et al.*,                            *

    Defendants.                   *

_____

O R D E R

Ming Zhang was a professor at the University of Georgia's College of Public Health. Zhang contends that Defendants discriminated against her based on her national origin (Chinese), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and her race (Asian American), in violation of Title VII and 42 U.S.C. § 1981. She also claims that her supervisors retaliated against her after she complained about perceived preferential treatment of a white tenure candidate's application, in violation of Title VII and § 1981. Finally, Zhang alleges that she became disabled and that Defendants failed to accommodate her disability, in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Presently pending before the Court is Defendants' summary judgment motion. For the reasons set forth below, the Court grants the motion (ECF No. 43).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Zhang, the record reveals the following facts.  This case is not complicated, but the Court's recitation of the facts is lengthy because the parties do not agree on what the exhibits say and mean.

Ming Zhang was a professor at the University of Georgia, where she worked in the College of Public Health's Department of Epidemiology and Biostatistics.  She is an Asian American person of Chinese origin.  Zhang began working at UGA in 2010 as an assistant professor in the College of Public Health.  She was promoted to associate professor with tenure in 2017.  During the

timeframe relevant to this action, Zhang's direct supervisor was Jose Cordero, who was head of the Department of Epidemiology and Biostatistics. Marsha Davis is the dean of the College of Public Health and was Cordero's supervisor during the relevant timeframe.

## I.    Zhang's Complaints About the Department and Cordero

In 2020, Zhang served on the promotion and tenure committee for Andrea Swartzendruber, an assistant professor of epidemiology. Zhang claims that she did not receive an electronic calendar invitation to a July 2020 committee meeting regarding a pre-evaluation of Swartzendruber's tenure application. Zhang did receive notification of an August 2020 committee meeting, which she attended. During that meeting, Zhang and another professor, Xiao Song, raised issues with Swartzendruber's tenure application, asserting that Swartzendruber did not meet the College's teaching load requirements and that the dossier supporting her application contained false information. Zhang also argued that Swartzendruber was not yet eligible to be considered for tenure. But the committee, led by Cordero, voted on Swartzendruber's application "without the benefit of having confirmatory data about each of the issues." Defs.' Mot. Summ. J. Ex. 5, Letter from J. Cordero to Committee 1 (Sep. 15, 2020), ECF No. 44-2.

Cordero asserts that after the vote, he investigated the concerns raised by Zhang and Song, concluded that Swartzendruber had not made any material misrepresentations in her dossier, and

issued a letter regarding his findings to the tenure committee. *Id.* Cordero noted that Swartzendruber satisfied the teaching requirement because she had taught at least one course per semester, and for those semesters when she only taught one course, a UGA business manager confirmed that Swartzendruber completed a course buyout that allowed her to apply external grant funds toward her state-funded instruction time. Cordero also noted that there had been a "misunderstanding" within the Department that faculty members could not apply for tenure until after their fifth year. *Id.* at 2. But, according to UGA's Office of Faculty Affairs, there was a "tricky" caveat that even though a candidate completing her fourth year is not "fully eligible to apply" for tenure when preliminary consideration of tenure applications occurs during the spring, she would be eligible by the time of formal consideration in the fall and could therefore apply for preliminary consideration before she is fully eligible. *Id.* Based on that new information from the Office of Faculty Affairs, the Department informed the two faculty members who previously believed that they were not eligible to submit a tenure application in 2020 that they could, after all, apply for preliminary consideration. *Id.* One of those faculty members was Swartzendruber, and she promptly submitted her application in July 2020.

Cordero later sent Zhang a letter of counseling, which chastised Zhang for waiting until the August 27 meeting to raise

her concerns about Swartzendruber's tenure application, without prior notice. Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. 4, Letter from J. Cordero to M. Zhang (Sep. 23, 2020), ECF No. 50-4. Cordero also expressed concern that Zhang's conduct during the meeting "was unbecoming for a faculty member" because she repeatedly interrupted other committee members. *Id.* at 1.

After Cordero issued the letter of counseling, Zhang and Song, along with another colleague named Hanwen Huang, submitted a written complaint to Elizabeth Weeks, UGA's Associate Provost for Academic Affairs. The authors did not identify themselves in the letter but signed it "A Group of Faculty in Department of Epidemiology and Biostatistics." Defs.' Mot. Summ. J. Ex. 6, Letter from Group of Faculty to E. Weeks (Sep. 24, 2020), ECF No. 44-3. The letter stated that "faculty A" and "faculty B" were excluded from the preliminary meeting about Swartzendruber. It also raised concerns about Swartzendruber's application, accused Cordero of placing a retaliatory letter in Zhang's personnel record, and raised concerns about Cordero's leadership style and lack of professionalism. *Id.* at 1-5. The letter did not expressly mention race, national origin, or discrimination. It did accuse Cordero of retaliating "against faculty who raised different opinions" during the August 27 meeting. *Id.* at 3.

The next month, Song, Zhang, and Huang submitted another letter from the "Group of Faculty Members at the Department of

Epidemiology and Biostatistics," this time to Senior Vice President for Academic Affairs and Provost Jack Hu. Defs.' Mot. Summ. J. Ex. 7, Letter from Group of Faculty to J. Hu (Oct. 4, 2020), ECF No. 44-4. The authors did not identify themselves in the letter. The letter accused Cordero of manipulating the promotion and tenure process for Swartzendruber, and it expressed concerns about perceived unfairness in teaching load, annual review criteria, and allocation of departmental funds. *Id.* at 1-3. Specifically, the authors accused Cordero of treating Ye Shen, a biostatistics faculty member, more favorably than other faculty members. *Id.* The letter did not expressly mention race, national origin, or discrimination. It did accuse Cordero of retaliating "against faculty members who raised questions" during the August 27 meeting, of placing a retaliatory letter in Zhang's personnel record, and of retaliating against unspecified faculty members for questioning his methods. *Id.* at 4-5.

Nearly a year later, in September 2021, Song, Zhang, and Huang wrote another letter to Hu, this time signing their names. Defs.' Mot. Summ. J. Ex. 8, Letter from M. Zhang *et al.* to J. Hu (Sep. 9, 2021), ECF No. 44-5. The letter complained that Associate Provost Weeks never produced an investigation report regarding their prior letter to her and opined that Weeks's failure to produce a report was "a dangerous signal sent from Provost's office showing its stance and permissiveness over wrongdoings in academic integrity

and fairness, and importantly, in the wake of correcting anti-Asian bias nationwide." *Id.* at 1.  The letter noted that Song and Zhang "are Asian females" and accused Cordero of excluding them from the preliminary meeting about Swartzendruber. *Id.*  The letter also complained that Cordero "retaliated fiercely against Drs. Zhang and Song, who raised legitimate questions about" Swartzendruber during the August 2020 tenure committee meeting. *Id.*  The letter further stated that Cordero was biased toward Swartzendruber and Shen, "two faculty members . . . that are close to him." *Id.* at 3.  Finally, the letter asked Hu to keep the authors' "reports confidential." *Id.* at 5.

The next month, in October 2021, Song, Zhang, and Huang sent another letter to Hu.  The October 2021 letter purports to respond to an email Hu sent to Zhang on September 10, 2021.  The letter accused the College of Public Health—specifically Davis and Cordero—of providing false information to the provost following the September 2020 letter.  The letter included a timeline of the reports that Song, Zhang, and Huang made to the provost's office and the UGA Ombudsperson, and it complained that the provost did not take their reports seriously.  The October 2021 letter did not explicitly mention race or national origin discrimination, but it did reiterate the accusation that Cordero retaliated against "colleagues with different opinions" and "faculty members who

raised legitimate questions." Defs.' Mot. Summ. J. Ex. 9, Letter from M. Zhang *et al.* to J. Hu 1-2 (Oct. 11, 2021), ECF No. 44-6.

In December 2021, UGA's vice provost for academic affairs appointed an independent committee composed of faculty members from outside the College of Public Health to review the allegations made by Song, Zhang, and Huang. The three-person review committee was provided with the communications Song, Zhang, and Huang had sent regarding their concerns, as well as responses from the provost's office. The review committee interviewed Cordero, Davis, Song, Zhang, and Huang, as well as several other faculty members, and they "explored the promotion and tenure process as well as the culture in the department." Defs.' Mot. Summ. J. Ex. 12, Epidemiology & Biostatistics Review 1, ECF No. 44-9.

In an undated report that was forwarded to Zhang, Song, and Huang on February 18, 2022, the review committee reported that it had investigated the complainants' concerns about the Epidemiology and Biostatistics Department's promotion and tenure process, leadership, and culture. The review committee noted that the Department's tone was "tense," with individuals who interacted with the complainants (Song, Zhang, and Huang) "feel[ing] they have been bullied." *Id.* The review committee found no "major issues" with the Swartzendruber promotion and tenure process and no "evidence of favoritism or lack of fairness." *Id.* at 1-2. Finally, the review committee stated that it "experienced

behaviors during the interviews" that were consistent with descriptions of "disruptive behavior" they had been told about, including unnamed individuals "blaming others for problems, becoming unusually upset over everyday situations, challenging and resisting authority," and "expressing entitlement and that rules do not apply." *Id.* at 3. The report also stated that the "uncomfortable environment" in the Department was "largely due to one individual," who had "created a divide" within the Department. *Id.* Zhang understood that she was the "one individual" referenced in the report. The review committee's report does not reference complaints of race or national origin discrimination or complaints of retaliation.

## II.  Zhang's 2021-2022 Teaching Assignments

As an associate professor, Zhang was expected to devote fifty percent of her employment effort to teaching, forty-five percent to research, and five percent to service. When she was hired, Zhang was informed that her teaching load would be designated by the College of Public Health and that course buyouts would follow the College's policy on teaching load. Under the policy, a tenured faculty member like Zhang, who was on a nine-month contract with a teaching effort of fifty percent, was "expected to teach four three-semester-hour courses per year or equivalent (12 credit hours)." Defs.' Mot. Summ. J. Ex. 13, Policy on Teaching Load 1 (Jan. 1, 2021), ECF No. 44-10. The policy outlined the activities

that could count toward the twelve-hour teaching load, including formal courses (counted at face value) and supervising graduate and undergraduate research (calculated based on a formula set forth in the policy). *Id.* The policy allows faculty "involved in externally funded projects" to "buy out of state-funded budgeted time for instruction by charging the time to the grant or contract as a proportion of salary." *Id.* at 2. The policy provides buyout rates, and it states: "The maximum number of courses one can buy out is 3 courses (9 credits). Everyone must teach one three-hour course per academic year." *Id.* The policy also outlines buyout procedures; instructional buyouts "must be approved by the Department Head and the Associate Dean of Academic Affairs." *Id.* The policy states that faculty should complete an online request form to submit a buyout request, then once the request was "fully approved," the College of Public Health's business office would handle the necessary funding changes. *Id.*

In January 2021, Zhang emailed Cordero to ask if she could "buy out courses in advance, like paying in Spring 2021 and get course release in Fall 2021 or Spring 2022." Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. 13, Email from M. Zhang to J. Cordero (Jan. 20, 2021, 2:47 PM), ECF No. 50-6. Cordero responded, "Yes, you can buyout this semester and apply it for Fall 2021 or Spring 2022[, but] the extension cannot go beyond Spring 2022." *Id.*, Email from J. Cordero to M. Zhang (Jan. 20, 2021, 5:38 PM). Zhang contends

that this email chain establishes that she "secured course buyouts for her Spring 2022 classes." Pl.'s Statement of Material Facts ¶ 23, ECF No. 50-1. But she did not point to any evidence that she submitted a formal buyout request that was fully approved by the Department and the College. She also did not point to evidence that any formal buyout approval authorized her to buy out two courses in fall 2021 plus two courses in spring 2022.

In October 2021, associate department head Andreas Handel emailed Zhang to ask which time slot she preferred to teach an Epidemiology 4070 course during spring 2022. Defs.' Mot. Summ. J. Ex. 14, Email from A. Handel to M. Zhang (Oct. 22, 2021, 3:34 PM), ECF No. 44-11. Zhang replied that she had "one mentoring credit and one course buyout" to be used in spring 2022. *Id.*, Email from M. Zhang to A. Handel (Oct. 22, 2021, 3:41 PM). Handel responded that because Zhang bought out two courses for fall 2021, she could only buy out one course for spring 2022. *Id.*, Email from A. Handel to M. Zhang (Oct. 22, 2021, 3:48 PM). Zhang replied that for Fall 2021 she had "one course buyout and one course credit" for teaching two prior practicum courses. *Id.*, Email from M. Zhang to A. Handel (Oct. 22, 2021, 3:59 PM). Handel responded that "per college rules everyone needs to do at minimum 1 [course] per academic year." *Id.*, Email from A. Handel to M. Zhang (Oct. 22, 2021, 4:09 PM).

A week and a half after Handel's emails with Zhang, Cordero emailed Zhang about the situation. He stated that he understood

Zhang "requested to have buyouts that would mean that" Zhang would "not be teaching in the Spring semester." Defs.' Mot. Summ. J. Ex. 15, Email from J. Cordero to M. Zhang (Nov. 2, 2021, 4:54 PM), ECF No. 44-12. Cordero stated that the College of Public Health required all faculty members teach "at least one course a year," so she would have to teach a class in spring 2022. *Id.* He suggested that Zhang teach a section of Epidemiology 4070, a course she had taught for nine years. *Id.* Zhang replied that she thought mentoring counted for course teaching and that she already had a spending plan for her grants that would be difficult to meet if she had to teach a lecture course in spring 2022. *Id.*, Email from M. Zhang to J. Cordero (Nov. 2, 2021, 5:20 PM). Cordero responded that Davis decided "that all faculty must teach at least one course" and that mentoring and buyouts "can cover up to three courses." *Id.*, Email from J. Cordero to M. Zhang (Nov. 2, 2021, 5:28 PM).

The next week, Cordero informed Zhang that he had met with Davis and Senior Associate Dean for Research and Faculty Affairs Timothy Heckman regarding Zhang's "request to buy out all [her] teaching load" for the 2021-2022 academic year. Defs.' Mot. Summ. J. Ex. 16, Email from J. Cordero to M. Zhang (Nov. 9, 2021), ECF No. 44-13. Cordero stated that the 3.55 mentoring credit hours Zhang accumulated in 2020 and 2021 plus a course buyout covered Zhang's teaching obligations for fall 2021, but for spring 2022,

Zhang would need to complete another buyout to release a three-credit course and should "complete the buyout process as soon as possible." *Id.* Finally, Cordero stated that the fourth three-credit course "will need to be covered by teaching" and that Zhang was "scheduled to teach EPID 4070 on Tuesdays and Thursdays from 09:35 AM – 10:50 AM." *Id.*

Zhang began teaching the Epidemiology 4070 course in January 2022. On January 20, 2022, Zhang reported to Cordero that she held the class via Zoom that day because she had "a cold" and had "only rested for a couple of hours" the night before. Defs.' Mot. Summ. J. Ex. 18, Email from M. Zhang to J. Cordero (Jan. 20, 2022, 5:49 PM), ECF No. 44-15. The next day, Zhang met with Cordero, Davis, and Heckman to discuss her teaching obligation. During the meeting, Davis reiterated that Zhang was required to teach one three-credit course and that if Zhang failed to teach the course, she would be subject to disciplinary action. Defs.' Mot. Summ. J. Ex. 19, M. Davis File Memo, ECF No. 44-16. Zhang "was given the opportunity to change her stance on not teaching." *Id.* Zhang told Cordero and Davis during the meeting that she was feeling stressed and having trouble sleeping. Zhang asserts that she also informed Davis and Cordero that she had been experiencing "rapid heartbeat, shortness of breath and chest pain." Zhang Decl. ¶ 4, ECF No. 50-24.

On January 24, 2022, Zhang emailed Cordero, copying Davis, and said it was "time to find a new instructor for" Epidemiology 4070 and that she had been "risking [her] health to help [with the] course for the last two weeks." Defs.' Mot. Summ. J. Ex. 17, Email from M. Zhang to J. Cordero (Jan. 24, 2022, 11:39 PM), ECF No. 44-14. She stated that she would cover the class on that week and would meet with the new instructor "to ensure a smooth transition." *Id.* The same day, she told Davis that she "did not feel well last a couple of days [sic]." Defs.' Mot. Summ. J. Ex. 21, Email from M. Zhang to M. Davis (Jan. 24, 2022, 4:08 PM), ECF No. 45-1.

On January 28, 2022, Cordero emailed Zhang because she had expressed concerns about her health and he "wanted to see how" she felt. Defs.' Mot. Summ. J. Ex. 22, Email from J. Cordero to M. Zhang (Jan. 28, 2022, 3:28 PM), ECF No. 45-2. He also stated that there were "resources available within UGA" regarding FMLA (Family and Medical Leave Act) and ADA (Americans with Disabilities Act), and he included links to UGA websites that provided FMLA and ADA resources for employees. *Id.* Zhang responded that she had previously taken FMLA leave and would "take it if needed." *Id.*, Email from M. Zhang to J. Cordero (Jan. 29, 2022, 5:38 PM).

The Department hired Edmond Maes to teach the remainder of the Epidemiology 4070 course. On March 11, 2022, Davis issued Zhang a letter "initiating disciplinary action" based on Zhang's

failure to teach at least one class for the academic year. Defs.'
Mot. Summ. J. Ex. 23, Letter from M. Davis to M. Zhang 2 (Mar. 11,
2022), ECF No. 45-3. The first step in the disciplinary process
was a March 18, 2022, meeting between Zhang and Davis, Cordero,
Heckman, and Vice Provost Rodrigues. During that meeting, UGA
offered Zhang a settlement in lieu of "proceeding with the
disciplinary process." Defs.' Mot. Summ. J. Ex. 24, Email from M.
Davis to M. Zhang (Mar. 20, 2022, 9:03 AM), ECF No. 45-4. Under
the terms of the proposed settlement, Zhang's contract for 2021-
2022 would "be pro-rated to reflect the number of classes [Zhang]
taught and the remainder [would] be owed to [UGA]," and Zhang would
have to work out a "repayment schedule." *Id.* The proposed
settlement would also allow Zhang to count "mentoring credits"
toward her teaching load for the next academic year. *Id.* The
letter summarizing the proposed settlement stated that if Zhang
did not agree to the settlement terms, then the College would
proceed with the second step of the disciplinary process. *Id.* In
her response to the proposed settlement, Zhang stated she would
agree to the settlement after several items were addressed,
including (1) "disciplinary action with a paycheck deduction" for
Davis and Cordero for their role in the "miscommunication," (2) an
audit to determine how the teaching load policy had been applied
in the Department for the previous five years, (3) arranging to
pay for the spring 2022 course from Zhang's grants instead of her

paycheck, and (4) withdrawal of the allegations against Zhang. Defs.' Mot. Summ. J. Ex. 25, Email from M. Zhang to M. Davis (Mar. 21, 2022, 4:57 PM), ECF No. 45-5.

The next day, after Davis received Zhang's response, Davis sent Zhang an email stating that because Zhang "did not agree to the settlement letter as written," the College would "proceed with the second step of the disciplinary process." Defs.' Mot. Summ. J. Ex. 26, Email from M. Davis to M. Zhang (Mar. 22, 2022, 4:16 PM), ECF No. 45-6. On March 30, 2022, Davis wrote to Provost Hu to request commencement of formal disciplinary proceedings against Zhang for neglect of duty, disruption of teaching activities, and violation of UGA policies. An ad hoc committee was appointed to advise UGA President Jere Morehead whether disciplinary action should be taken against Zhang. The ad hoc committee began its inquiry in June 2022. It did not issue a report to Morehead until after the fall 2022 semester started.

The ad hoc committee issued a report to Morehead on September 8, 2022. Defs.' Mot. Summ. J. Ex. 33, Letter from Comm. to J. Morehead (Sep. 8, 2022), ECF No. 45-13. The committee concluded that there was "dysfunction within the department," that the teaching policy requiring faculty members to teach one course per year was "open to interpretation," that a "breakdown occurred in the process of approving and communicating" Zhang's course buyouts for 2021-2022, and that Zhang and the department "share[d]

responsibility for what happened." *Id.* at 1.  The committee found that although the department head and dean "clearly and unequivocally indicated to the relevant parties" that Zhang "would be required to teach a specific classroom course during Spring 2022," Zhang "refused" to teach the course, citing "her understanding that she had been approved for a two-course buyout for Spring 2022." *Id.* at 1-2.  The committee did not recommend formal disciplinary proceedings, but it did recommend that Zhang be required to "use her mentoring credit to retroactively 'buy out' the Spring 2022 course she failed to teach, and she must expect and plan to teach at least one classroom course per academic year in the future." *Id.* at 2.

Morehead sent Zhang a letter regarding the ad hoc committee's recommendations.  Defs.' Mot. Summ. J. Ex. 34, Letter from J. Morehead to M. Zhang (Sep. 19, 2022), ECF No. 45-14.  Morehead stated that he understood that Zhang "refused" to continue teaching Epidemiology 4070 after January 26, 2022.  *Id.*  He explained that he considered this refusal "to be a serious and grave abandonment of teaching responsibilities . . . and a significant breach of professional responsibility as a faculty member." *Id.*  Morehead noted that although the ad hoc committee recommended allowing Zhang to use mentoring credit retroactively to buy out the spring 2022 course, Zhang did "not have sufficient mentoring credit to do so." *Id.*  Thus, Morehead accepted the ad hoc committee's recommendations

"with the modified condition that [Zhang] agree to teach an additional course for spring 2023 . . . . in addition to the Committee's recommendation that [Zhang] expect and plan to teach at least one classroom course per academic year in the future." *Id.* Morehead instructed Zhang to respond and indicate whether she agreed to the modified recommendation; if Zhang did not agree, then Morehead would "direct the continuation of dismissal proceedings." *Id.* Zhang responded to Morehead's letter and did not accept his conditions. Defs.' Mot. Summ. J. Ex. 36, Letter from M. Zhang to J. Morehead (Oct. 10, 2022), ECF No. 45-16. She argued, among other things, that she did have enough mentoring credit to cover the spring 2022 course and that Cordero and Davis should be removed from their leadership positions. *Id.*

**III. Zhang's Fall 2022 Teaching Assignment**

Before the ad hoc committee issued its recommendation on the disciplinary issue, Zhang was assigned to teach Epidemiology 4070 during fall 2022. Zhang asserts that she got permission to buy out the course, but the only evidence she cited in support of this assertion—the January 2021 email from Cordero—does not support it. As discussed above, that email was not an approval of a formal buyout request. Plus, the email explicitly stated that if Zhang wanted to complete a buyout in spring 2021, she could "apply it for Fall 2021 or Spring 2022[, but] *the extension cannot go beyond Spring 2022*." Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. 13, Email

from J. Cordero to M. Zhang (Jan. 20, 2021, 5:38 PM), ECF No. 50-6 (emphasis added).

On August 28, 2022, Zhang emailed Cordero to request a teaching assistant for the class. It is not clear whether Cordero responded to that message, but he did send Davis an email stating that there were only three teaching assistants for the Department, who were assigned as follows: one to Professor Mallis, who was "new" and had eighty-five students in four courses (two sections of Epidemiology 4070 and two sections of Biostatistics 2010); one to Professor Shen, who had fifty-three students in one course; and one to Professor Fox, who was "new" and had forty students in one course. Defs.' Mot. Summ. J. Ex. 32, Email from J. Cordero to M. Davis (Sep. 1, 2022, 10:01 AM), ECF No. 45-12. The email also stated that five professors were not assigned teaching assistants: Professor Kyle, who had 150 students in four courses; Professor Joey, who had 117 students in four courses; Professor Winter, who had seventy-one students in two courses; Professor Zhang, who had thirty-nine students in one course; and Professor Lambert, who had thirty-three students in one course. *Id.*

Zhang again requested a teaching assistant on September 14, 2022. Cordero responded that the Department had "a limited number of TAs" and that teaching assistants were assigned to faculty members with less teaching experience and more students. Defs.' Mot. Summ. J. Ex. 31, Email from J. Cordero to M. Zhang (Sep. 14,

2022, 2:06 PM), ECF No. 45-11. Zhang contends that one of the professors who was assigned a teaching assistant—Nicholas Mallis—only had a total of twenty-four students in his two sections of Epidemiology 4070 and that under Cordero's 2020 teaching assistant assignment process Zhang should have had priority for a teaching assistant because she had more students in her one section of Epidemiology 4070. Under the 2020 process, the "priority to assign TAs [was] based on class enrollment, starting with those with the larger enrollment." Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. 35, Email from J. Cordero to Epi Bio Faculty & Staff (Sep. 30, 2020, 9:25 AM), ECF No. 50-23. Using that process in 2020, two teaching assistants were assigned to assist three instructors with Biostatistics 2010 and Biostatistics 3000, and two teaching assistants were assigned to assist two instructors with Epidemiology 4070. *Id.* Zhang did not point to any evidence to refute Defendants' evidence that during fall 2022 Mallis had a total of eighty-five students across two sections of Epidemiology 4070 and two sections of Biostatistics 2010. Zhang does dispute that Mallis was a "new" professor because he "co-taught Epidemiology 4070" before fall 2022, Zhang Decl. ¶ 3, but she did not point to evidence that Mallis had independently taught the course before fall 2022.

In mid-September 2022, one of Zhang's Epidemiology 4070 students emailed Davis about the class. He stated that his section

did not have a teaching assistant and that it "may become an issue in the coming weeks" because Zhang was "overwhelmed with maintaining all aspects of th[e] course by herself." Defs.' Mot. Summ. J. Ex. 35, Email from W. Pitts to M. Davis (Sep. 20, 2022, 12:26 PM), ECF No. 45-15. The student asked if a TA could be added to the course. *Id.* Davis checked in with the student on October 13 "to see how class [was] going." *Id.*, Email from M. Davis to W. Pitts (Oct. 13, 2022, 11:07 AM). The student responded that although Zhang was "very passionate" about the class and he enjoyed the content she was teaching, it seemed like Zhang was "quite overwhelmed" because students were still awaiting grades from a September 15 case study and a September 22 exam. *Id.*, Email from W. Pitts to M. Davis (Oct. 13, 2022, 11:52 AM). The student opined that things would become "more stressful" for Zhang because there was "another case study and exam in the next week." *Id.*

On October 18, 2022, Davis emailed Zhang and stated that it had come to her attention that students had "not received their assignments or exams back with their grades." Defs.' Mot. Summ. J. Ex. 37, Email from M. Davis to M. Zhang (Oct. 18, 2022, 7:24 PM), ECF No. 45-17. Zhang responded that she was "concerned" that Davis's message showed "a lack of trust to a faculty member," and she requested a meeting with Davis and UGA's vice president for instruction. *Id.*, Email from M. Zhang to M. Davis (Oct. 18, 2022, 9:18 PM). Davis and Zhang went back and forth in ten subsequent

emails, with Davis asking Zhang to provide the status of her grading and Zhang stating that she was doing her best but providing no numbers. *Id.*, Email chain between M. Davis and M. Zhang (Oct. 19, 2022, 9:16 AM to Oct. 24, 2022, 6:22 PM).

On October 26, 2022, Davis emailed Zhang and stated that based on "student complaints that" Zhang was "not providing timely feedback" and Zhang's "refusal to provide information regarding the status of [her] grading," Davis, in consultation with the provost, was removing Zhang from her teaching responsibilities for Epidemiology 4070. *Id.*, Email from M. Davis to M. Zhang (Oct. 26, 2022, 11:45 AM). Davis further stated that another instructor would be assigned to assume teaching responsibilities for the course and that Zhang should immediately turn over any ungraded assignments and exams to Cordero.

On October 27, 2022, Morehead sent Zhang a notice of formal discipline and removal proceedings. Defs.' Mot. Summ. J. Ex. 38, Letter from J. Morehead to M. Zhang (Oct. 27, 2022), ECF No. 45-18. Morehead noted that Zhang, in her October 10 letter, did not agree to Morehead's conditions for resolving the disciplinary proceeding and instead raised a variety of complaints about the College of Public Health, which Morehead stated were "investigated . . . by an independent ad hoc committee . . . and are now closed." *Id.* at 1. Morehead also stated that during the present semester, Zhang showed "a continuing pattern of neglect of duty and

disruption of teaching activities." *Id.* at 2. Morehead found that grounds existed for Zhang's removal based on her "refusal to teach the assigned course in spring 2022," her "continuing neglect of duty in [her] fall 2022 teaching assignment," her "refusal to agree to teach an additional course in spring 2023," her "insubordinate refusal to respond to reasonable requests from [her] Dean," and her "denial of responsibility for these failures." *Id.* Morehead directed the continuation of discipline and removal proceedings.

## IV.  Zhang's Hospitalization, Promotion Request, and FMLA Leave

In January of 2023, Zhang was diagnosed with the heart conditions ventricular tachycardia and paroxysmal tachycardia. Zhang did not point to evidence that she informed anyone about the diagnosis when she received it. On January 26, 2023, Natalie Cox, an associate general counsel from UGA's Office of Legal Affairs, notified Zhang that her discipline and removal hearing was scheduled for February 27, 2023. The day before the scheduled hearing, Zhang emailed the members of the discipline committee to notify them that she was hospitalized and could not attend the hearing. Defs.' Mot. Summ. J. Ex. 43, Email from M. Zhang (Feb. 26, 2023, 5:56 PM), ECF No. 46-3. A committee member responded to Zhang's email, wished her a healthy recovery, notified that her hearing would be rescheduled, and advised Zhang to follow "appropriate policies and procedures" for requesting FMLA leave.

*Id.*, Email from J. Maerz to M. Zhang (Feb. 27, 2023, 12:27 PM).
Zhang's counsel responded to the email and notified the committee
that Zhang was undergoing heart surgery and that she would not be
available for a hearing until she returned from medical leave.
*Id.*, Email from J. Oinonen to J. Maerz (Feb. 27, 2023, 12:39 PM).
Cox responded to Zhang's counsel and provided information on how
to apply for FMLA leave and ADA accommodations.

As of March 28, 2023, Zhang had not requested FMLA leave.
Cordero emailed Zhang to inform her that it was time for her post-
tenure review, that the review needed to be completed by May, and
that "it would be good" for Zhang to submit her "post-tenure report
by the third week of April." Pl.'s Resp. to Defs.' Mot. Summ. J.
Ex. 25, Email from J. Cordero to M. Zhang (Mar. 28, 2023, 11:01
AM), ECF No. 50-16. Zhang responded and stated that she was on
medical leave "through the end of May" and that she wanted to apply
for a promotion to full professor. *Id.*, Email from M. Zhang to J.
Cordero (Mar. 31, 2023, 10:44 PM). She requested "a late
submission in the summer" because her health condition was "not
promising" for her "to prepare for the application package." *Id.*
Davis forwarded the email to Associate Provost Weeks and asked for
advice. Davis noted that as far as she knew, Zhang's FMLA
application was "incomplete." Defs.' Mot. Summ. J. Ex. 45, Email
from M. Davis to E. Weeks (Apr. 1, 2023, 6:25 PM), ECF No. 46-5.
Weeks informed Davis, copying Cordero, that UGA's post-tenure

review policy did not "allow a faculty member to elect preliminary consideration for promotion to Professor in lieu of post-tenure review." *Id.*, Email from E. Weeks to M. Davis (Apr. 3, 2023, 10:42 AM). She also explained that because UGA's "promotion and tenure process is a cohort model," there was "not an avenue for off-cycle applications." *Id.* Finally, Weeks stated that based on her understanding from the office of legal affairs, "until the FMLA request and supporting documentation" were received, "Zhang should be considered as an active employee." *Id.*

After he received Weeks's guidance, Cordero responded to Zhang's email and informed her that there was "no room for a late submission" on the promotion application because "all faculty requesting promotion" must follow the same timeline. Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. 25, Email from J. Cordero to M. Zhang (Apr. 5, 2023, 4:16 PM), ECF No. 50-16. Cordero stated that if Zhang wanted to be considered for promotion, she must submit her letter of intent to Cordero in the next week and must submit her dossier by April 21. *Id.* Cordero stated that there was "no option for off-cycle application" because the "promotion and tenure process is a cohort model." *Id.* Cordero further explained that a faculty member could not "elect preliminary consideration for promotion to Professor in lieu of a post-tenure review." *Id.* Finally, Cordero noted that UGA had not received Zhang's FMLA

request and that she would be "considered an active employee" until
UGA received the FMLA request and supporting documentation.  *Id.*

Zhang submitted her request for FMLA leave on April 11, 2023.
The request was "entered and approved for 2/28/23 through 5/12/23,
. . . the end date of spring semester."  Defs.' Mot. Summ. J. Ex.
46, Email from B. Barnes to M. Zhang (Apr. 11, 2023, 12:24 PM),
ECF No. 46-6.  On April 24, 2023, Zhang sent a letter to Morehead,
copying Cordero, complaining that Cordero subjected her to
harassment and interfered with her medical leave by demanding that
she submit a dossier package by April 21.  Defs.' Mot. Summ. J.
Ex. 48, Email from M. Zhang to J. Morehead (Apr. 24, 2023, 2:45
PM), ECF No. 46-8.  Davis responded to the email, stating that
because Zhang's FMLA leave was approved on April 11, Cordero's
"prior requests for information regarding post-tenure review
[were] on hold" and Cordero would provide further instructions for
the post-tenure review process after Zhang's FMLA leave ended on
May 12, 2023.  *Id.*, Email from M. Davis to M. Zhang (Apr. 26, 2023,
7:15 PM).  Davis stated that Zhang was "not expected to work" while
on FMLA leave.  *Id.*  She also noted that UGA did not have any
requests for ADA accommodations on file for Zhang and that Zhang
could contact the human resources department with her questions
regarding ADA accommodations.  *Id.*

On May 17, 2023, Zhang responded to Davis's April 26 email.
Zhang stated (among other things) that she had repeatedly explained

her "health disability," that Davis and Cordero "failed to engage in any interactive process with" her regarding her heart disease, and that Davis sent "ADA paperwork" to Zhang for "the first time" in April 2023.  Defs.' Mot. Summ. J. Ex. 49, Email from M. Zhang to M. Davis (May 17, 2023, 12:59 AM), ECF No.46-9.[1]  Davis responded on May 31, 2023, stating that Zhang had not filed an ADA accommodation request and that if Zhang wished to request ADA accommodations, she should do so through UGA's human resources department.  *Id.*, Email from M. Davis to M. Zhang (May 31, 2023, 5:16 PM).  Davis also noted that Zhang's FMLA leave ended at the end of the spring semester on May 12, 2023, and that because Zhang was on a nine-month contract she was not obligated to work for UGA during the summer.  *Id.*

Zhang submitted an ADA accommodation request to UGA's human resources department on June 7, 2023.  She sought extended medical leave, a temporary release from teaching, a teaching assistant for large classes, and a transfer to a different department.  The human resources representative instructed Zhang to have her medical provider complete an ADA medical certification form.  In mid-July, Zhang told the human resources representative that the signed ADA form was delayed because "Doctors' appointment in the summer is

---

[1] As discussed above, Cordero had sent Zhang information about ADA and FMLA resources in January 2022.  Defs.' Mot. Summ. J. Ex. 22, Email from J. Cordero to M. Zhang (Jan. 28, 2022, 3:28 PM), ECF No. 45-2.

not easy." Defs.' Mot. Summ. J. Ex. 51, Email from M. Zhang to A. Creech (July 19, 2023, 4:54 PM), ECF No. 46-11.  Zhang later informed the human resources representative that her cardiologist was the most important doctor to complete the form but was unavailable until August 31.  *Id.*, Email from M. Zhang to A. Creech (Aug. 3, 2023, 5:10 PM).

**V.    Zhang's Termination**

Zhang's discipline and removal hearing was rescheduled for August 31, 2023.  Zhang, who was represented by counsel, attended the hearing and testified before the discipline committee.  The committee also heard testimony from other witnesses, including Davis and Cordero.  The discipline committee issued a report on September 22, 2023. Defs.' Mot. Summ. J. Ex. 53, Discipline Comm. Report (Sep. 22, 2023), ECF No. 46-13.  The committee found that Zhang willfully violated UGA and Board of Regents policies relating to neglect of duty in teaching and disruption of teaching, administrative, or other authorized activities.  The committee unanimously recommended that Zhang's tenure be revoked and that she be dismissed from her position as an associate professor at UGA.  On September 26, 2023, Morehead found that both charges against Zhang were sustained and that her employment with the university, including tenure, should be terminated as of that date. Defs.' Mot. Summ. J. Ex. 55, Letter from J. Morehead to M. Zhang

(Sep. 26, 2023), ECF No. 47-2.  Zhang appealed her termination to the Board of Regents, which upheld the termination.

DISCUSSION

Despite the voluminous record and the parties' many disputes about what it says, the issues in this case are straightforward: did Zhang present enough evidence to support claims of (1) race or national origin discrimination, (2) retaliation, and (3) disability discrimination?  The Court addresses each claim in turn.

## I.  Zhang's Race and National Origin Discrimination Claims

To establish a Title VII race or national origin discrimination claim, Zhang must show that her employer subjected her to an adverse employment action "because of" her race or national origin, which she may do by demonstrating that her race or national origin "was a motivating factor" for the action.  42 U.S.C. § 2000e-2(a)(1) & (m).  For a § 1981 race discrimination claim, Zhang must demonstrate that she was subjected to an adverse employment action and that her race was the "but for" cause of the action.  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).  An adverse employment action is an action that constitutes "harm respecting an identifiable term or condition of employment."  *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).  To survive summary judgment, Zhang must present enough evidence to show causation—evidence that "creates a triable issue concerning the employer's discriminatory intent."  *Tynes v.*

*Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).  There are several ways to show that an adverse employment action was motivated by discriminatory intent, including direct evidence, circumstantial evidence that satisfies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Tynes*, 88 F.4th at 946 (quoting *Smith*, 644 F.3d at 1327–28).

Here, Zhang did not present any direct evidence of race or national origin discrimination.  She relies primarily on the *McDonnell Douglas* framework, which requires a plaintiff to show, "as a preliminary matter, not only that she is a member of a protected class, that she suffered an adverse employment action, and that she was qualified for the job in question, but also that she was treated less favorably than 'similarly situated' individuals outside her class." *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc).  A plaintiff and her comparators must be "similarly situated in all material respects," which means they were subject to the same employment policy and share a similar employment and disciplinary history. *Id.* at 1227-28.  Here, Zhang appears to base her discrimination claims on

disparate treatment related to the assignment of a teaching assistant and the deadline for a promotion application.[2]

First, Zhang argues that Defendants treated her differently than Nicholas Mallis, a white instructor who received a teaching assistant during fall 2022 while she did not. Zhang did not clearly explain how the denial of a teaching assistant for fall 2022 constituted "harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355. The Court is not convinced that the denial of a teaching assistant is an actionable adverse employment action under the circumstances here, where there were limited teaching assistants for the Department and fewer than half of the professors were assigned a teaching assistant for the semester. Zhang's discrimination claim based on the denial of a teaching assistant thus fails.

Even if the denial of a teaching assistant was an actionable adverse employment action, Zhang did not demonstrate that she and Mallis were similarly situated in all material respects. Zhang argues that she was due to receive a teaching assistant over Mallis because she had more students in her one section of Epidemiology 4070 than Mallis had in his two sections of the course. But Zhang

---

[2] Zhang listed several adverse employment actions in the discrimination section of her brief, including the disciplinary proceedings that culminated in her termination. Zhang, though, did not clearly point to evidence that would permit a factfinder to conclude that these decisions were motivated by her race or national origin. The only comparator evidence she cites relates to the denial of a teaching assistant and the denial of an extension for a promotion application.

did not rebut the evidence that Mallis had eighty-five students in four classes, including two sections of Epidemiology 4070 and two sections of Biostatistics 2010. Even under Zhang's interpretation of the 2020 teaching assistant policy she relies on, Zhang did not present sufficient evidence from which a reasonable jury could conclude that she should have received priority over Mallis. That policy stated that the priority was to assign teaching assistants to larger enrollment courses, including Biostatistics 2010 and Epidemiology 4070. If, as Zhang asserts, Mallis only had twenty-four students in his two sections of Epidemiology 4070, then he had sixty-one students in his two sections of the Biostatistics 2010 course—which means that he had more students in Biostatistics 2010 than Zhang had in Epidemiology 4070, plus his Epidemiology 4070 students. For all these reasons, the Court finds that Zhang did not show that she and Mallis were similarly situated in all material respects. Accordingly, Zhang did not establish a prima facie case of race or national origin discrimination based on the denial of a teaching assistant.

Next, Zhang argues that Defendants treated her differently than Andrea Swartzendruber, a white professor who Zhang contends did not teach the same number of classes as other professors before she was considered for tenure. Zhang did not clearly explain how she and Swartzendruber were similarly situated in all material respects. As discussed above, Zhang did not comply with the 2021

teaching policy that required her to teach at least one course per academic year. In contrast, it is undisputed that Swartzendruber taught at least one course per semester before she was granted tenure, plus Defendants presented evidence, which Zhang did not rebut, that Swartzendruber completed buyouts for one course per semester. Thus, Zhang did not demonstrate that Swartzendruber failed to comply with the teaching policy, so Swartzendruber is not a valid comparator. For these reasons, Zhang did not establish a prima facie case of discrimination based on the teaching policy issue.

Zhang also argues that the Department gave Swartzendruber an extension of time to file her tenure application but did not give Zhang an extension of time to file her application for a promotion to full professor. It is true that the Department allowed Swartzendruber to submit her tenure application in July 2020 instead of April 2020, following a misunderstanding by Department leadership about when she was eligible to begin the process. It is also true that when Zhang told the Department that she wanted to apply for a promotion to full professor instead of undergoing the post-tenure review process and submit her promotion application sometime in the summer of 2023, Cordero responded that (a) Zhang could not bypass the post-tenure review process and (b) if she wanted to be considered for a promotion in 2023, she needed to submit her letter of intent by mid-April and her dossier by

April 21.  After Zhang applied for and received FMLA leave, Zhang was informed that the post-tenure review had been put on hold until she returned from medical leave and that she was not obligated to work for UGA over the summer.  Zhang argues that it was an adverse employment action for Defendants to decline her request for an extension to submit her promotion application.

Under the unique circumstances presented here, it is not clear to the Court how the denial of an extension to apply for a promotion to full professor was a material harm respecting an identifiable term or condition of Zhang's employment.  Well before Zhang mentioned that she wanted to apply for a promotion to full professor, she was far along the path to termination.  By October 2022, Zhang's dean, a committee appointed by the provost, and UGA's president all concluded that Zhang's actions constituted neglect of duty and disruption of teaching and administrative duties that warranted dismissal.  Zhang did not point to any evidence suggesting that she had any shot of being recommended for a promotion to full professor before her dismissal hearing, regardless of when she turned in her application.  Once Zhang returned from her medical leave and the committee held her disciplinary hearing, she was promptly terminated.  For these reasons, the Court finds that Zhang did not present sufficient evidence from which a reasonable jury could conclude that she

suffered a discriminatory adverse employment action when she was denied an extension to apply for a promotion.

Even if Zhang had established that the denial of an extension for her promotion application deadline was an adverse employment action, she did not show that she and Swartzendruber were similarly situated in all material respects. Swartzendruber was applying for tenure and a promotion to associate professor in 2020. Due to a misunderstanding of UGA's promotion policy, the Department did not learn until after the application deadline that Swartzendruber and another faculty member were eligible to submit applications for preliminary consideration. To correct its mistake, the Department notified Swartzendruber and the other faculty member that they could go ahead and submit their tenure applications so the preliminary consideration could be completed in time for full consideration of the applications with the rest of the cohort during the fall. Zhang, in contrast, wanted to apply for a promotion to full professor but had not yet completed the required five-year post-tenure review process because it was put on hold due to her FMLA leave. Before the review process could be completed, Zhang was terminated. For these reasons, Swartzendruber and Zhang were not similarly situated, and Zhang did not establish a prima facie case of discrimination based on the denial of her request for an extension of the promotion application deadline.

In addition to her comparator arguments, Zhang summarily contends that she pointed to enough evidence to satisfy the "convincing mosaic" standard. Despite its "flowery language," the convincing mosaic analysis is "a stand-in for the Rule 56 summary judgment standard applied to employment discrimination." *Ismael v. Roundtree*, No. 25-10604, 2025 WL 3492930, at *5 (11th Cir. Dec. 5, 2025). "A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit." *Tynes*, 88 F.4th at 946. A plaintiff can show a convincing mosaic by presenting evidence of "(1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011), *overruled on other grounds by*, *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)).

Here, although Zhang argues that she has enough evidence to meet the "convincing mosaic" standard, she did not specify what evidence in the present record would allow a jury to infer that Defendants intentionally discriminated against Zhang because of her race or national origin. Zhang has the "burden to produce and

identify evidence," to support her claims, and the Court is not required to "'scour the record' in search of" additional evidence. *Black Box Royalties, Inc. v. Universal Music Publ'g, Inc.*, 839 F. App'x 346, 350 (11th Cir. 2020).  Zhang did not identify evidence to support her "convincing mosaic" argument, and the evidence she cited would not allow a jury to infer that Defendants discriminated against her because of her race or national origin.  Thus, the convincing mosaic standard does not save Zhang's discrimination claims, and Defendants are entitled to summary judgment.

## II.  Zhang's Retaliation Claims

Both Title VII and § 1981 protect employees from retaliation for opposing unlawful discrimination.  Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed any practice" made unlawful by Title VII. 42 U.S.C. § 2000e-3(a).  Similarly, § 1981 prohibits an employer from retaliating against an employee because she complained of racial discrimination.  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008).  To establish a retaliation claim under Title VII or § 1981, Zhang must show "that she engaged in statutorily protected conduct; she suffered an adverse employment action; and a causal relation exists between the two events."  *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023).

Here, Zhang contends that she engaged in activity protected under Title VII and § 1981 when she and two colleagues wrote a

series of letters to UGA's administration to protest alleged preferential treatment of a white tenure candidate. She asserts that Cordero and Davis subjected her to adverse employment actions because of the letters, including (1) requiring her to teach a course in the spring of 2022 and (2) initiation of disciplinary proceedings. In addition to showing that these actions are materially adverse actions that would support retaliation claims under Title VII and § 1981, Zhang must also establish that (1) she engaged in protected activity under Title VII and § 1981 and (2) the protected activity was a but-for cause of any materially adverse actions.[3]

To engage in protected activity, an employee must communicate her reasonable belief that the employer's conduct constitutes discrimination that is unlawful under Title VII or § 1981. It is not enough for an employee simply to complain about a supervisor's conduct; she must complain that the conduct was motivated by her race or national origin. *See, e.g.*, *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (per curiam)

---

[3] Zhang also contends that a "writeup" she received was a materially adverse retaliatory action. She did not specify which writeup she meant, but if she meant the September 23, 2020, letter of counseling from Cordero, she cannot show a causal connection because that letter predated all the letters she contends were protected activity.

Zhang further argues that the denial of a teaching assistant for fall 2022 was retaliatory. For the reasons explained above, the Court is not convinced that the denial of a teaching assistant is a materially adverse action under the circumstances of this case or that Zhang was treated differently than a comparator who was similarly situated in all material respects but had not engaged in protected activity.

("Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII.").

Zhang does not seriously argue that the first two letters—the September 24, 2020, letter to Weeks and the October 4, 2020, letter to Hu—were protected activity under Title VII and § 1981, and the Court finds that they were not. Neither letter identified its authors by name, and neither letter mentioned race, national origin, discrimination, or retaliation for complaints of race or national origin discrimination. Accordingly, the two 2020 letters are not protected activity under Title VII or § 1981.

The third letter, to which Zhang did sign her name, focuses on Cordero's alleged abuses of power, the lack of investigation by the provost's office into the Swartzendruber tenure issue, and Cordero's alleged favoritism toward Shen and Swartzendruber. Defs.' Mot. Summ. J. Ex. 8, Letter from M. Zhang *et al.* to J. Hu (Sep. 9, 2021), ECF No. 44-5. The letter does opine that Weeks's failure to produce a report was "a dangerous signal sent from Provost's office showing its stance and permissiveness over wrongdoings in academic integrity and fairness, and importantly, in the wake of correcting anti-Asian bias nationwide." *Id.* at 1. But nothing in the letter explains how the lack of a report from Weeks regarding the prior complaints—which did not mention race or

national origin discrimination or retaliation for complaints of race or national origin discrimination—relates to anti-Asian bias.

The only part of the five-page letter that remotely connects race or national origin to an employment decision is the following sentence: "Drs. Zhang and Song, both are Asian females, were also excluded by Dr. Jose Cordero from attending the preliminary consideration meeting on [the Swartzendruber tenure] case." *Id.* It is a stretch to infer from this language that Song and Zhang were claiming that they were excluded from the meeting *because* they were Asian women. Moreover, it is not clear how their exclusion from a preliminary meeting about another person's tenure decision would give rise to a good faith, objectively reasonable belief that Cordero unlawfully discriminated against them because of their race or national origin by treating them worse than non-Asian or non-Chinese employees with respect to the terms and conditions of their employment. *See Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999) (explaining that for activity to be protected under Title VII's opposition clause, the employee must have an objectively reasonable belief that her employer engaged in an employment practice made unlawful by Title VII). Accordingly, the Court doubts that the September 2021 letter to Hu is protected activity under Title VII and § 1981.

Even if the September 2021 letter was protected activity under Title VII and § 1981, Zhang must show a causal connection between

the protected activity and a materially adverse employment action. To do that, she has to show that the relevant decisionmaker was aware of the protected conduct and that the protected conduct "was a but-for cause of the alleged adverse action." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1338 (11th Cir. 2023) (per curiam) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)) (stating that both Title VII and § 1981 retaliation claims require "but for" causation). Thus, Zhang must prove that if she had not complained *of race or national origin discrimination*, she would not have suffered an adverse action.

A.  The Spring 2022 Teaching Requirement

Zhang asserts that she suffered a materially adverse action when Cordero and Davis required her to teach Epidemiology 4070 in the spring of 2022. Though Zhang asserts that Cordero gave her permission to buy out or use mentoring credit to cover all four courses for the 2021-2022 academic year, she did not point to evidence to support this assertion. Rather, the evidence she presented shows that Zhang asked Cordero in January 2021 if she could buy out courses in advance by "paying in Spring 2021" to "get course release in Fall 2021 or Spring 2022." Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. 13, Email from M. Zhang to J. Cordero & A. Handel (Jan. 20, 2021, 2:47 PM), ECF No. 50-6. The evidence also establishes that Cordero informed Zhang that she could complete a buyout in spring 2021 "and apply it for Fall 2021 or

Spring 2022." *Id.*, Email from J. Cordero to M. Zhang (Jan. 20, 2021, 5:38 PM). Even if Zhang subjectively believed that Cordero's email meant that she could buy out all her courses for the 2021-2022 academic year (despite the use of the disjunctive "or" in her request and in Cordero's response), she did not point to evidence that she followed the rest of the required buyout procedures, including submission of a formal buyout request that was fully approved by the Department and the College. She also did not point to evidence that any formal buyout approval authorized her to buy out both courses in spring 2022. Accordingly, the present record does not support Zhang's argument that she secured buyouts to cover her teaching requirements during spring 2022 or that any buyouts were revoked. Rather, a more accurate description of the challenged employment action based on the present record is that Cordero and Davis refused to grant Zhang an exception to the "Everyone must teach one three-hour course per academic year" requirement. The Court is not convinced that this is a materially adverse action.

Even if the denial of an exception to the teaching requirement was a materially adverse action, Zhang did not point to any evidence that Cordero or Davis was aware of the September 2021 letter. The letter is addressed to Hu. It does not indicate that it was copied to Cordero or Davis, and Zhang did not point to any evidence indicating that they received it. Rather, she and Song

and Huang asked that their reports be kept confidential.  Thus, Zhang did not establish that the two decisionmakers were aware she engaged in protected activity, and the denial of an exception to the teaching requirement could not have been in retaliation for the September 2021 letter.  Likewise, Zhang did not produce sufficient evidence from which a jury could conclude that the decisionmakers were aware she engaged in protected activity before they initiated disciplinary proceedings based on Zhang's refusal to teach Epidemiology 4070 in spring 2022.  For these reasons, the Court finds that Zhang failed to establish a prima facie case of retaliation based on the spring 2022 teaching requirement.

  B. <u>The Disciplinary Proceedings</u>

  Zhang also contends that she suffered materially adverse actions when she was subjected to disciplinary proceedings and later terminated.  There is no dispute that these actions are materially adverse actions that would support a retaliation claim if Zhang could establish causation.  As discussed above, Zhang did not clearly point to evidence that Cordero and Davis, who decided to initiate disciplinary proceedings, knew about the September 2021 letter.  Likewise, Zhang did not present evidence that Morehead, who directed the continuation of disciplinary proceedings and later terminated Zhang, knew about the September 2021 letter.  Without evidence that the relevant decisionmakers were aware of protected conduct, Zhang cannot establish causation.

Even if the Court were to accept Zhang's apparent assumption that Cordero, Davis, and Morehead somehow knew about the September 2021 letter and interpreted it to mean that she was complaining of race and national origin discrimination, her retaliation claim still fails.  First, Davis did not initiate disciplinary proceedings until March 2022, approximately six months after Zhang sent the September 2021 letter.  A very close temporal proximity between a decisionmaker's knowledge of protected conduct and a materially adverse action may create a genuine fact dispute on causation, but "a three to four-month gap in proximity is too long to show causal connection" in the absence of other evidence of causation.  *Ceus v. City of Tampa*, 803 F. App'x 235, 249 (11th Cir. 2020) (per curiam).

Second, even if Zhang had shown a causal connection sufficient to establish a prima facie case of retaliation, Zhang did not point to evidence to rebut Defendants' legitimate nonretaliatory reason for the disciplinary proceedings: Zhang refused to teach a class that Cordero, Davis, and Morehead determined she was required to teach.  Zhang argues that teaching the course was not an essential requirement of her job, citing her belief that she received approval to buy out the course.  It is true that months after the disciplinary process began, an ad hoc committee determined that Zhang, Davis, and Cordero shared responsibility for a breakdown in communication which resulted in Zhang believing that she had been

approved for a two-course buyout in spring 2022. But the key inquiry is what Zhang's *employer* believed in good faith. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1148 (11th Cir. 2020) ("[W]hen assessing whether an employer has properly imposed an adverse action on an employee based on that employee's conduct, the question is not whether the employee actually engaged in the conduct, but instead whether the employer in good faith believed that the employee had done so."). It is undisputed that Cordero, Davis, and Morehead believed that Zhang had *not* been approved to buy out two courses; they repeatedly told Zhang that she was required to teach a specific course in spring 2022, and they concluded when she stopped teaching the course that she was violating UGA's teaching policies and neglecting her duties. For all these reasons, Defendants are entitled to summary judgment on Zhang's retaliation claims based on the disciplinary proceedings and her termination.

## III. Zhang's Disability Discrimination Claims

Section 504 of the Rehabilitation Act prohibits entities that receive federal funds from discriminating against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a); *accord Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). Disability discrimination under the Rehabilitation Act includes failing "to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the

employer." *Pell City*, 866 F.3d at 1289. Defendants do not dispute that Zhang's heart condition is a disability within the meaning of the Rehabilitation Act. They do argue that Zhang did not request a reasonable accommodation.

To show that "a requested accommodation is reasonable under the Rehabilitation Act, an employee must put her employer on notice of the disability for which she seeks an accommodation and provide enough information to allow her employer to understand how the accommodation she requests would assist her." *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1330 (11th Cir. 2022). "The Rehabilitation Act does not require employers to speculate about their employees' accommodation needs." *Id.* at 1334. "Instead, . . . to trigger an employer's duty to provide a reasonable accommodation, the employee must (1) make a specific demand for an accommodation and (2) demonstrate that such accommodation is reasonable." *Id.* "Only after the employee provides this information must the employer 'initiate an informal, interactive process' with the employee to discuss the employee's specific limitations, explore potential accommodations, and select the most appropriate accommodation for both the employer and the employee." *Id.* (quoting 29 C.F.R. § 1630.2(o)(3)).

Here, Zhang claims that she requested a reasonable accommodation in January 2022 when she informed Davis and Cordero that she had been experiencing symptoms including rapid heartbeat,

shortness of breath, and chest pain and then told them that it was time to find a new instructor for Epidemiology 4070.  Zhang, though, did not present evidence that she put any Defendant on notice of the disability for which she sought an accommodation. Instead, Zhang pointed to evidence showing that she gave Davis and Cordero a list of symptoms that could indicate several medical conditions.  She did not point to evidence that she explained how the symptoms substantially limited one or more of her major life activities, and she did not explain how the accommodation she says should have been provided (not teaching the class) would help her perform the essential functions of her job.  Even after Cordero sent Zhang resources for employees with disabilities, Zhang did not provide additional information about her disability.  The Court is not convinced that Zhang's January 2022 list of symptoms and vague statements about health concerns was enough to trigger UGA's duty to provide an accommodation under the Rehabilitation Act. Her disability discrimination claim thus fails.

In addition, Zhang did not show that her requested accommodation—being excused from the teaching requirement—was reasonable or would enable her to perform the essential functions of her job without imposing an undue hardship on her employer.[4]

---

[4] Zhang argues that teaching a course was not an essential function of her job because Cordero approved Zhang's buyouts for spring 2022.  As discussed above, though, the evidence Zhang relies on does not establish that Cordero approved two course buyouts for spring 2022.

An employer is not required to eliminate essential functions of a disabled employee's job or assign essential functions of the disabled person's job to another employee. *See, e.g.*, *Bagwell v. Morgan Cnty. Comm'n*, 676 F. App'x 863, 866 (11th Cir. 2017) (per curiam). Based on the present record, teaching at least one course per year was an essential function of Zhang's job as a professor in the College of Public Health, and UGA had to hire another professor to teach the Epidemiology 4070 class in spring 2022. For this additional reason, Zhang's disability discrimination claim fails.

CONCLUSION

As discussed above, the Court finds that Zhang did not establish a genuine fact dispute on any of her claims. The record instead demands judgment as a matter of law for the Defendants. Accordingly, the Court grants Defendants' summary judgment motion (ECF No. 43).

IT IS SO ORDERED, this 23rd day of December, 2025.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA